**Melissa MARTIN, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 07–94–0199–CR.

Court of Appeals of Texas, Amarillo.

March 16, 1995.

Shelton & Jones, Dales Jones, Lubbock, for appellant.

Lubbock County Asst. Crim. Dist. Atty., Michael West, Lubbock, for appellee.

Before REYNOLDS, C.J., and BOYD and QUINN, JJ.

QUINN, Justice.

The Appellant, Melissa Martin, asks whether a written statement lacking the elements of an affidavit may support a perjury conviction. We answer yes and affirm.

## FACTS

On January 8, 1993, the grand jury for the 365th Judicial District indicted the Appellant for intentionally and knowingly making two inconsistent statements under oath. The first, written on April 9, 1991, stated that a Gerard Hennessey was "belligerent and argumentative" during a meeting with Justice of the Peace, L.J. Blalack while the second, executed on December 3, 1992, explained that Hennessey was "not loud, abusive, or rude but was irate ... over bearing [sic] pushy and ... arrogant...."

Blalack had apparently had a set-to with Hennessey, held the layman in contempt, and then rescinded the edict. Worried that Hennessey may nevertheless file a grievance, the Justice of the Peace requested the Appellant, who worked in Blalack's office, and other clerks to compile written statements memorializing their perception of the event. He further directed them to incorporate into the documents adjectives describing Hennessey as "argumentative, belligerent, [and] abusive."

The Appellant acquiesced. Upon completing hers, she signed the document. Debra Chambers, a notary public, affixed her name to the right of the Appellant's then stamped her seal of office within the lower right-hand margin. Absent, however, were a jurat or other written words declaring that the Appellant uttered the statement under oath. Because of this, she moved to suppress the document as irrelevant. The trial court denied the motion.

When the cause eventually came for trial, the parties stipulated that:

Debra Chambers would testify that she made me swear that the statement notarized on April 9, 1991, was true, accurate and correct. Furthermore, that Debra Chambers would state that she is a licensed notary for the State of Texas, and Jim Mull, Texas Ranger, would testify that I gave him a sworn [written] statement [the second statement] stating that my statement of April 9, 1991 was not absolutely the truth.

The trial court found this sufficient to convict and assessed her community supervision and deferred adjudication.

## POINTS OF ERROR

In four points of error, the Appellant contends that in situations where perjury is founded upon a written statement, the statement must be nothing less than an affidavit. Since the April 9th statement was not an

affidavit it was irrelevant and inadmissible. We disagree and, before explaining why, note that which no one disputes.

First, all agree that the Appellant wrote the April 9th statement. All agree that the December 3rd writing, which met the formalities of an affidavit, contradicted portions of the April 9th document. Furthermore, no one suggests that the items contradicted were expressions of opinion rather than fact. That Chambers was a notary is also uncontroverted. With this said, we turn to the penultimate issues which involve the interpretation of § 37.02 of the Texas Penal Code.

### a. Standard of Review

■ Issues of statutory construction are questions of law. *Johnson v. City of Fort Worth,* 774 S.W.2d 653, 656 (Tex.1989). Thus, the interpretation accorded by the lower court is freely reviewable. Yet, there are several basic rules to which all must adhere. The first requires the court to derive the legislative intent underlying the statute and to interpret same commensurate with that intent. *Leonard v. State,* 767 S.W.2d 171, 176 (Tex.App.—Dallas 1988) *affirmed sub. nom, Schalk v. State,* 823 S.W.2d 633 (Tex. Crim.App.1991). The next rule compels the court to read the provision as written without expanding, inserting or deleting words. *Id.; State v. Hatten,* 600 S.W.2d 828, 830 (Tex. Crim.App.1980). Finally, should material terms lack express statutory definition, the reviewing body must accord those words their plain meaning. *Casillas v. State,* 733 S.W.2d 158, 163 (Tex.Crim.App.1986).

### b. What's a Statement

■ One commits perjury upon making a false statement under oath or swearing to the truth of a false statement previously made when the statement is required or authorized by law to be made under oath. *Tex. Pen.Code Ann.* § 37.02(a)(1) (Vernon 1994). Furthermore the individual must act with the intent to deceive and know the meaning of the statement uttered. *Id.* at § 37.02(a).

■ Adopted in 1974, § 37.02 combined the distinct crimes of perjury and false swearing. *Tex.Pen.Code Ann.* § 37.04, Prac-

tice Commentary (Vernon 1974). Though virtually identical, they deviated in one important respect, the motivation for the oath. *Tex.Pen.Code* art. 302 & 310 (Vernon 1974) (repealed); *City of San Antonio v. Poulos,* 422 S.W.2d 140, 143–44 (Tex.1967) (discussing the elements of both); *Commercial Casualty Ins. Co. v. Holmes,* 206 S.W.2d 882, 884 (Tex.Civ.App.—Austin 1947, writ ref'd n.r.e.) (discussing the elements of both). If the oath taken was mandated by law, the falsehood constituted perjury, if not, it was false swearing. *Id.; Steher v. State,* 23 Tex. App. 176, 4 S.W. 880, 881 (1887); *Davidson v. State,* 22 Tex.App. 372, 3 S.W. 662, 663–64 (1886). For example, one committed false swearing by attesting, to obtain a marriage license, to a county clerk that he was the age of majority, when in fact he was not. *Davidson v. State, supra.* Under that circumstance an oath was not a prerequisite to securing the license, though the clerk was authorized to administer it. On the other hand, lying in a affidavit to secure a search warrant would be perjury since an affidavit, with its attendant oath, was a legal prequisite to securing the warrant. *Tex.Code Crim. Proc.Ann.* art. 18.01(b) (Vernon 1977). Nevertheless, by enacting § 37.02 of the Penal Code, the legislature sought to vitiate the difference inherent in the old law and criminalize as perjury *"all* [false] statements authorized to be made under oath whether or not an oath is required by law." *Tex.Pen. Code Ann.* § 37.04, Practice Commentary (emphasis added).

■ More importantly, gone was the expressed reference to the word "affidavit." Under article 310 of the old code, the false statement prohibited by the legislature consisted of a "declaration or affidavit." *Tex. Pen.Code* art. 310; *see Rives v. State,* 107 Tex.Crim. 370, 296 S.W. 576, 578 (1927) (stating that the "offense denounced contemplate[d] a false swearing by writing or affidavit of a thing, past or present"). Now, "any representation of fact" constitutes a statement. *Tex.Pen.Code Ann.* § 37.01(2) (Vernon 1994). In adopting that definition, the legislature liberated the term from the restrictive formalities accompanying an "affida-

vit" and expanded the category of utterances potentially criminal.[1]

▮ Yet, the Appellant argues differently. She believes that "statement" means something less than any "representation of fact" when the false representation is contained in a written document. In that situation, she concludes, the document must have the attributes of an affidavit otherwise it would not be a sworn statement. The argument is baseless for several reasons.

First, had the legislature intended to restrict perjury to false affidavits when a writing was involved, it would not have deleted the word from the recodified statute. Indeed, the legislature retained the term in related areas such as § 18.01(b) of the Texas Code of Criminal Procedure. There it pronounced that search warrants could issue only upon "affidavit" establishing probable cause. Including "affidavit" in § 18.01(b) while redacting it from the perjury statute discloses a legislative intent contrary to the Appellant's belief.

▮ Second, in arguing as she does, the Appellant misconceives the nature of an oath and affidavit. The former, though not defined by statute, is a pledge to act in a truthful and faithful manner.[2] *Vaughn v. State,* 146 Tex.Crim. 586, 177 S.W.2d 59, 60 (1943). This pledge is made manifest through an "unequivocal act by which [the individual] consciously takes upon himself the obligation of an oath" before someone authorized to administer an oath. *Lowry v. State,* 164 Tex.Crim. 178, 297 S.W.2d 848, 850 (1956); *Vaughn v. State,* 177 S.W.2d at 60. Thus, simply pledging to act truthfully and faithfully before someone authorized to administer oaths constitutes a valid oath. For instance, one orally pledging to the truthfulness "of statements made or to be made" confirms, by oath, the veracity of those statements. *Marsden v. Troy,* 189 S.W. 960, 964 (Tex.Civ.App.—San Antonio 1916, no writ) (distinguishing between an oath and affidavit).

▮ An affidavit is simply another way to manifest an oath. It is a pledge in written form, *Marsden v. Troy,* 189 S.W. at 964, constituting prima facie evidence that an oath was taken. *Order of Aztecs v. Noble,* 174 S.W. 623, 624 (Tex.Civ.App.—Austin 1915, no writ) (dealing with a jurat). That its formalities were not met does not negate the existence of the oath; it merely vitiates the use of the instrument as proof that an oath was taken. Often, one may present other evidence to prove that particular statements were sworn to in spite of the defective instrument. *See e.g., King v. State,* 167 Tex.Crim. 440, 320 S.W.2d 677, 678 (1959) (holding that in absence of a jurat, the fact that the statement was sworn to may be shown by other evidence). Here, for example, the stipulations executed by the parties evidenced that the Appellant orally pledged to the veracity of her April 9th statement.

Mixing legislative history and case law with the plain meaning of the perjury statute, we determine that the written document created by the Appellant fell within the parameters of § 37.02(a). It need not have been a affidavit. Moreover, it is not within our perview to amend the provision to mean something other than that intended by the legislature. *Leonard v. State,* 767 S.W.2d at 176.

### c. Must Some Third–Party See or Rely on the Statement

▮ The Appellant next argues that her statement could not fall within § 37.02(a) since no one saw or relied upon it. She is mistaken.

The Appellant admitted in her December 2, 1992, sworn declaration that Blalack feared "Hennessey might make a complaint against him to the Judicial Conduct Commission." This spurred him to protect himself. In doing so, he not only "ordered all . . . clerks to write out statements" but also told the

---

1. An affidavit consists of a writing signed by the party making it, sworn to before an officer authorized to administer oaths and certified by said officer under seal of office. *Tex.Gov.Code Ann.* § 312.011(1) (Vernon 1988).

2. Statute does, however, include "affirmation" within the scope of an oath. *Tex.Pen.Code Ann.* § 1.07(32) (Vernon 1994). Thus, one affirming an act has taken an oath.

Appellant what to say. After completing hers, and knowing portions thereof to be false, she swore to its accuracy before a notary public. At that instant, the crime became choate. *Welch v. State,* 71 Tex.Crim. 17, 157 S.W. 946, 946–47 (1913). There was no need for anyone else to see or rely upon the document. *Id.*

### d. Was the Oath Required or Authorized by Law

In her concluding paragraph under Points One, Two and Three, the Appellant closed by saying that the "written statement is not a statement 'required or authorized by law to be made under oath.'" We again disagree.

The stipulations evinced that Chambers was a notary public. As such, she was authorized by law to administer oaths. *Tex. Gov. Code Ann.* § 406.016(a) (Vernon 1990). Her authority did not wane because nothing required the Appellant to act under oath. *Campbell v. State,* 43 Tex.Crim. 602, 68 S.W. 513, 514 (1902) (holding that a notary has authority to swear persons whether it be to necessary affidavits and those required by law or those which are purely voluntary). Thus, the oath was one authorized by law.

### e. Relevance of the April 9th Statement

The Appellant finally contends, in her discussion of all four points, that the April 9th statement was irrelevant under both Rules 402 and 403 of the Texas Rules of Criminal Evidence. The sole ground underlying the argument concerns whether the statement fell within the parameters of § 37.02(a)(1) of the Penal Code. Since it did not, according to the Appellant, it was inadmissible and highly prejudicial. Yet, as previously developed, it was one contemplated by the statute. The Appellant having assigned no other basis on which to exclude the document, the trial court properly allowed same.

Accordingly, the order assessing community supervision and deferring adjudication is affirmed and the four points of error overruled.