Reversed and Rendered and Majority and Dissenting Opinions filed
February 9, 2006














 

Reversed and Rendered and Majority and Dissenting
Opinions filed February 9, 2006.

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-04-00595-CR

____________

 

DEARL HARDY, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 344th
District Court

Chambers County, Texas

Trial Court Cause No. 344-12404

 



 

M A J O R I T Y   O P I N I O N

A jury found appellant Dearl Hardy guilty
of perjury and a judge sentenced him to six months= confinement in
the Chambers County jail and a $2,500 fine.  In eight sub-points of error, appellant
alleges that the evidence is both legally and factually insufficient to support
his conviction.  Because we find the
evidence to be legally insufficient to support appellant=s conviction, we
reverse the conviction and render a judgment of acquittal.

 








Background

In September 2001, appellant was the chief
deputy of the Chambers County Sheriff=s Department.  A jury found appellant guilty of perjury after
hearing evidence that appellant directed Deputy John Joslin to file a false DWI
(driving while intoxicated) charge against Vernon Coates.[1]  

Deputy Brett Hulsey arrested Coates on September
3, 2001 after Coates made two turns without signaling, ran a stop sign, and did
not pull over when Hulsey turned on his lights and siren.  When Coates finally did stop, he smelled of
alcohol and admitted that he had been drinking; however, he did not stumble or
stagger.  Later, Hulsey found empty beer
cans in Coates= truck. 
At the scene, Hulsey arrested Coates for evading arrest, failing to use
his turn signal, and disregarding a stop sign. 
However, Hulsey did not administer any sobriety tests or arrest Coates
for DWI.  Instead, he deferred to Joslin,
who was more qualified, and who had arrived on the scene with Sergeant David
Beck.  Coates was somewhat uncooperative
when arrested, and he became belligerent at the jail; however, there was
conflicting testimony as to whether Coates seemed intoxicated.  Jailer Steve Wood, who saw Coates at booking,
testified that while Coates was verbally abusive, agitated, and belligerent, he
did not appear to be intoxicated.  Joslin thought Coates
was borderline intoxicated, and Hulsey testified that while he never thought
that Coates was intoxicated, another deputy could have had probable cause to
believe that Coates was DWI.








At the jail, Hulsey submitted a probable
cause affidavit regarding only the traffic offenses.  Hulsey then received a phone call from
appellant, who had already been notified of Coates= arrest.  According to dispatcher and notary Carlton
Carrington, when appellant learned that Coates had been arrested and that his
attorney was coming to the jail, appellant said: AGood news travels
fast.@[2]  After explaining the circumstances of Coates= arrest, Hulsey
told appellant that he was unsure whether Coates was intoxicated and informed
him that Joslin was handling the DWI aspect.

Although Hulsey testified that appellant
never ordered him to file a false report, that night Hulsey wrote two offense
reports about Coates= arrest. 
The first mentioned only the odor of alcohol on Coates= breath, while the
second added that Coates did not appear to have the normal use of his mental
and physical faculties.  Similarly, at
trial, Hulsey testified that Coates did not appear to have the normal use of
his physical and mental faculties and agreed that in such a case,  a law enforcement officer would have probable
cause to arrest.  Hulsey further
testified that Coates appeared to be intoxicated and that there was probable
cause to arrest him for DWI.  However,
Hulsey also testified that he was not qualified to judge intoxication at the
time of Coates= arrest and stated that he had never
believed Coates to be DWI or legally intoxicated.   

After his initial conversation with
Hulsey, appellant called the jail to speak to Joslin.  Joslin had performed the HGN (horizontal gaze
nystagmus) test at the jail and determined that Coates was borderline, but not
legally intoxicated.  Joslin did not
perform any other sobriety tests and did not give Coates an intoxilyzer
test.  Over the phone, Joslin
acknowledged to appellant that Coates had bloodshot eyes, smelled of alcohol,
and had stumbled slightly while entering the jail.  However, Joslin told appellant that he did
not believe Coates was legally intoxicated because Coates had not demonstrated
sufficient clues on the HGN test. Joslin also testified that when he told appellant
that it would not be fair to charge Coates with a DWI, appellant stated that
they needed the DWI in order to suspend Coates= driver=s license.








A few minutes later, appellant called the
jail again and asked to speak with Joslin on an unrecorded line.  According to Joslin, appellant said that he
was very knowledgeable about DWIs and wanted Joslin to charge Coates with a DWI
Aor else.@  Although he still did not believe that Coates
was intoxicated, Joslin filed the DWI charge and included in his probable cause
affidavit that he smelled Aa very strong odor
of an alcoholic beverage on [Coates=] breath and
person.@  Joslin also wrote a report in which he
reiterated that Coates smelled of alcohol and stated that he thought Coates Awas intoxicated to
the point that he was a danger to himself and others from losing the normal use
of his mental and physical faculties.@[3] Joslin testified
that these statements were lies and that he filed the documents in violation of
the law.  Joslin also testified that he
told Hulsey, Wood, and Beck that he did not think Coates was intoxicated.  Joslin also claimed that he videotaped his
encounter with Coates and that he commented on the tape: AI don=t think it is
there; I think he is a little short.@  However, Joslin was unable to locate any
copies of this video.       








Joslin testified that he thought he would
be fired if he did not file the DWI charge. 
According to Joslin, appellant made it clear that anyone who broke the
chain of command and Awent above his head@ would be
fired.  Several other witnesses similarly
testified that the tense work atmosphere and rigid structure implemented during
appellant=s tenure were stressful and that employees
constantly feared losing their jobs.[4]  Furthermore, Hulsey testified that when
Joslin finished speaking with appellant the night of Coates= arrest, Joslin
seemed upset, threw his hands in the air, and said that he could not believe he
had to file the DWI charge.  Wood also
testified that Joslin seemed worried after his conversation with
appellant.  According to Wood, Joslin
told him that appellant had ordered Joslin to change his report, and that he
would lose his job if he failed to do so. 
Finally, magistrate Tommy Henry also felt that appellant tried to intimidate
people; when Henry questioned appellant about the differences in Hulsey=s and Joslin=s probable cause
affidavits, appellant became Atesty@ and told Henry
that Awe charge them;
you read them their rights.@  

The day after Coates= arrest, appellant
summoned Joslin to his office to discuss Joslin=s original
report.  According to Joslin, appellant
told him to delete any references to appellant and their second phone
conversation.  However, appellant also told
Joslin not to lie in his report and to tell the truth if anyone ever asked
about their second telephone conversation. 
Joslin revised his report and gave both the original and revised copies
to appellant. 

In April 2002, Ernest Rodney Yarbrough,
who was in charge of the Criminal Investigation Division of the sheriff=s department, was
conducting an internal investigation regarding Beck.[5]  Yarbrough believed that appellant had
tampered with this investigation, because after Yarbrough had obtained an affidavit,
appellant allegedly spoke with the affiant, who subsequently wanted to change
his story.  Yarbrough and appellant
argued about the investigation, and appellant confiscated Yarbrough=s files.  Yarbrough thought he would be fired over the
disagreement; however, in May 2002, the sheriff altered the chain of command so
that Yarbrough no longer reported to appellant. 
Upon learning of this change, Joslin and a few other deputies visited
Yarbrough in his office.[6]  Although the conversation was casual, Yarbrough
came to believe that some wrongdoing had occurred, and he relayed  his concerns to the sheriff.  








Around the same time, in May 2002, Texas
Ranger Frank Huff began investigating Joslin for allegations of sexual assault
of a female deputy.[7]  In the course of this investigation,  Joslin admitted to Huff that he had committed
a crime regarding the Coates arrest. 
Huff=s investigation eventually included Hulsey
and appellant.  As part of his
investigation, Huff arranged a recorded phone conversation between Hulsey and
appellant, during which appellant told Hulsey to tell the truth. 

Eventually, the Chambers County District
Attorney=s Office charged
Hulsey with a felony offense stemming from the DWI charge against Coates.  However, Hulsey=s case never
proceeded to trial because Hulsey testified at appellant=s trial pursuant
to an agreement with the State.  The
district attorney=s office also charged Joslin with a felony
for falsifying the DWI charges against Coates. 
Like Hulsey=s, Joslin=s case did not
proceed to trial because Joslin agreed to testify at appellant=s trial.  The State charged appellant with aggravated
perjury.  Appellant did not testify at
trial.

Standard of Review: Legal
Sufficiency 

Appellant argues that the evidence is legally
and factually insufficient to find him guilty of perjury beyond a reasonable
doubt.  In his seventh sub-point of
error, appellant argues that the State presented no evidence that Joslin made
the statements in his probable cause affidavit under oath.  We find that the evidence is legally
insufficient to prove that Joslin made the statements under oath. 








In evaluating the legal sufficiency of the evidence, we must
view the evidence in the light most favorable to the verdict and determine
whether any rational trier of fact could have found the essential elements of
the offense beyond a reasonable doubt.  Vasquez
v. State, 67 S.W.3d 229, 236 (Tex.
Crim. App. 2002).  This standard of
review applies to cases involving both direct and circumstantial evidence.  King v. State, 895 S.W.2d 701, 703
(Tex. Crim. App. 1995).  Although we
consider all of the evidence presented at trial, we may not re-weigh the
evidence and substitute our judgment for that of the jury.  King v. State, 29 S.W.3d 556, 562 (Tex. Crim. App.
2000).  The jury is the exclusive judge
of the credibility of witnesses and of the weight to be given their testimony,
and it is the exclusive province of the jury to reconcile conflicts in the
evidence.   Wesbrook v. State, 29
S.W.3d 103, 111 (Tex.
Crim. App. 2000).  If a reviewing court
determines that the evidence is legally insufficient to support an appellant=s conviction, it must render a
judgment of acquittal.  Clewis v.
State, 922 S.W.2d 126, 133 (Tex. Crim. App. 1996).

Analysis

To obtain a conviction of perjury in this
case, the State was required to prove beyond a reasonable doubt that appellant,
acting with intent to promote or assist the commission of the offense,
solicited, encouraged, directed, aided, or attempted to aid Joslin to commit
perjury.  Tex. Pen. Code Ann. ' 7.01(a),
7.02(a)(2) (Vernon 2003).  A person
commits perjury if, with intent to deceive and with knowledge of the statement=s meaning, he
makes a false statement under oath.  Tex. Pen. Code Ann. ' 37.02(a)(1) (Vernon
2003).








To constitute a valid oath, for the
falsity of which perjury will lie, there must be, in the presence of a person
authorized to administer it, an unequivocal act by which the affiant
consciously takes upon himself the obligation of an oath.  Weadock v. State, 118 Tex. Crim. 537, 546, 36
S.W.2d 757, 762 (1931).  In a perjury
case, in order to prove that a statement in an affidavit was made under oath,
the State must present witnesses who testify that the affiant appeared before a
notary or other officer authorized to administer the oath at the time the
affiant signed the affidavit.  Lowry
v. State, 164 Tex.
Crim. 178, 181, 297 S.W.2d 848, 850 (1956). 
In Lowry, witnesses identified the appellant=s signature and
the signature of notary S. B. Lusby; the State also proved that Lusby was a
notary public.  Id. at 180, 849.  However, no witnesses testified that Lowry
had appeared before the notary or that the notary had administered an oath to
Lowry.  Id.  
The court held that the jurat, even with proof of signatures and Lusby=s authority to
administer an oath, was legally insufficient to establish that Lowry had
appeared before an appropriate officer and made the statements under oath.  Id.
at 181, 850.  Although Lusby was a close
friend and business associate of Lowry=s and had also
testified that he had not administered any oath in connection with Lowry=s statement, the
court explicitly noted that Lusby=s testimony did
not influence its holding.  Id. at 182,
850.  Additionally, in its opinion on
rehearing, the court emphasized that its holding was a result of the Aentire absence of
any showing in the record before us that the appellant ever appeared before
Lusby at the time he signed the instrument in question.@  Id.
at 182, 851. 

In appellant=s case, the State
demonstrated that both Joslin and notary Carrington signed the affidavit.  However, no witnesses testified that Joslin
actually appeared before Carrington, that Carrington administered an oath to Joslin,
or that Joslin signed the affidavit in Carrington=s presence.  Thus, under Lowry, the State=s evidence is
insufficient to establish that Joslin made the statements in his probable cause
affidavit under oath.  Accordingly, we
hold that the evidence is legally insufficient to support appellant=s perjury
conviction.  

Like the dissent, we recognize that since Lowry,
at least one intermediate court has affirmed a perjury conviction based on
facts similar to those in appellant=s case.  See Quinones v. State, No.
05-01-01876-CR, 2003 WL 21525305, at *1 (Tex.
App.CDallas July 8,
2003, no pet.) (not designated for publication) (reasoning that an affidavit is
simply another way to manifest an oath). 
The Quinones court cited Martin v. State, which suggests
that an affidavit with a proper jurat suffices to convict for perjury.  Martin v. State, 896 S.W.2d 336, 339
(Tex. App. B Amarillo 1995, no pet.) (A[An affidavit] is
a pledge in written form ... constituting prima facie evidence that an oath was
taken.@).  Citing Lowry, the Martin court
defined Aoath@ as a pledge to
act in a truthful and faithful manner, Amade manifest
through an >unequivocal act by which [the individual]
consciously takes upon himself the obligation of an oath= before someone
authorized to administer an oath.@  Id.
at 339.  The court also asserted
that Asimply pledging to
act truthfully and faithfully before someone authorized to administer oaths
constitutes a valid oath.@  Id.   








However, while Martin and Quinones
recognize that swearing before an authorized official is inherent in the
definition of Aoath,@ neither case
addresses Lowry=s requirement that the State must present
testimony that such swearing actually occurred. 
As noted by the dissent, the Martin court held that the parties= stipulations at
trial constituted sufficient evidence that the appellant had taken an oath,
even though the appellant=s original statement was unaccompanied by
a jurat.  896 S.W.2d at 337, 339.  Citing King v. State, 167 Tex. Crim.
440, 442, 320 S.W.2d 677, 678 (1959), which held that other evidence could
prove the existence of an oath in the absence of a jurat, the Martin court
asserted that failure to comply with swearing formalities does not negate the
existence of an oath and reasoned that a party may Apresent other
evidence to prove that particular statements were sworn to in spite of the
defective instrument.@  Id. at 339. 
However, in appellant=s case, the
instrument itself is not defective, as it bears a proper jurat with the
signatures of both Joslin and Carrington, and the parties did not stipulate
that Joslin actually swore before the notary. 
Accordingly, we believe that Martin is factually distinguishable
whereas the facts in Lowry are nearly identical to those in appellant=s case.  Furthermore, although we acknowledge the
logic of Quinones and Martin, particularly because we are
persuaded that a proper affidavit should substitute for live testimony under
oath, we cannot ignore precedent from the Court of Criminal Appeals, even if it
is fifty years old.  Therefore, because
we are not the court of last resort, we are constrained to follow Lowry,
which has not been overruled or limited by the Court of Criminal Appeals.

Additionally, we do not believe that
Joslin=s testimony
prevents the application of Lowry to appellant=s case.  Joslin testified that he signed the probable
cause affidavit under appellant=s orders even
though he did not believe that Coates was DWI, and as the dissent notes, the
testimony of other witnesses corroborated this position.  However, the trial testimony fails to
establish that Joslin appeared before the notary and signed the affidavit in
his presence.  While we acknowledge the
dissent=s concern that Ademanding rigid
adherence to swearing formalities@ can be
problematic, we simply cannot ignore the controlling precedent of Lowry.








Because we find the evidence to be legally
insufficient, we need not address appellant=s remaining
sub-points of error or the issue of factual insufficiency.  English v. State, 171 S.W.3d 625, 630
(Tex. App.CHouston [14th
Dist.] 2005, no pet.)  We reverse
appellant=s conviction and render a judgment of
acquittal.

 

 

 

 

/s/      Adele Hedges

Chief Justice

 

 

 

 

Judgment
rendered and Majority and Dissenting Opinions filed February 9, 2006.

Panel consists of Chief Justice
Hedges and Justices Yates and Anderson. (Yates, J. dissenting)

 

Publish
C Tex. R. App. P. 47.2(b).

 











[1]  Appellant was
originally charged with aggravated perjury and the lesser included offense of
perjury.  However, the trial court
granted appellant=s motion for an instruction that the jury must find
appellant not guilty on the aggravated perjury charge and determine appellant=s guilt or innocence solely on the lesser perjury
charge.





[2]  Presumably, appellant=s comment stemmed from the fact
that Coates had a long history with the sheriff=s department, including a
highly-publicized and controversial arrest for the attempted murder of two
deputies.  Although the jury did not hear
specific details about Coates= history with the department, witnesses testified that
relations between Coates, his lawyer, and the sheriff=s department were unfriendly, and
that people at the jail treated Coates as if he were a special case the night
of his arrest.





[3]  Joslin claimed to have written an
original report on the DWI charge, but neither he nor the district attorney=s office was able to locate
it.  Joslin also testified that he did
not write the supplemental report used as evidence at trial and did not know
where it came from; Joslin stated, however, that the supplemental report fairly
accurately described what happened the night of Coates= arrest.





[4]  Only one
witness, jailer Steve Wood, testified that everyone seemed to like working
under appellant=s leadership.





[5]  The record does
not reveal the nature of this investigation. 
Although Beck was one of the deputies on the scene the night of Coates= arrest, the investigation does not appear to be
related to the Coates incident.





[6]   In April 2002, Joslin left the Chambers County Sheriff=s Department to work for Harris County.  Joslin had been working for Harris County
for only a few weeks when the Chambers County Sheriff rehired him and informed
Joslin that he no longer needed to report directly to appellant. Joslin=s
conversation with Yarbrough took place around this time. 





[7]  Joslin
contended that the allegations were for sexual harassment, not sexual
assault.  Joslin was not prosecuted on
these charges pursuant to his deal with the State to testify at appellant=s trial.