NO. 07-08-0495-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL D

JANUARY 14, 2010
_____

PETER HELLMUTH EGGERT,

Appellant

v.

THE STATE OF TEXAS,

Appellee
_____

FROM THE 266th DISTRICT COURT OF ERATH COUNTY;

NO. CR12122; HON. DAVID CLEVELAND, PRESIDING
_____

*Memorandum Opinion*
_____

Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.

Appellant Peter Hellmuth Eggert appeals his conviction for bribery. Through six issues, he contends that 1) the special prosecutor committed prosecutorial misconduct, 2) the State prosecuted an offense outside the jurisdictional boundaries of the indictment, 3) his right to a speedy trial was violated, 4) the evidence was legally and factually insufficient and 5) he received ineffective assistance of counsel. We affirm.

## Background

Jason Cashon, an assistant district attorney with Erath County, testified that he was handling a criminal case against an individual by the name of Marcos Gallardo who eventually pled guilty and was granted deferred adjudication. Cashon met with appellant who had advised him that Gallardo was the subject of an INS hold in San Antonio and appellant was attempting to keep Gallardo from being deported. Appellant advised Cashon he was not an attorney but was trying to help Gallardo as a friend. Cashon testified that he would not be able to help appellant and that he later learned appellant had filed a petition for a writ of habeas corpus for Gallardo based on newly discovered evidence in another court. This petition was denied, and appellant filed an appeal from the denial in the Eastland Court of Appeals. While the appeal pended, Cashon contacted Officer Joe Hutson, a Texas Ranger, regarding an investigation into whether appellant had contacted the victim in the Gallardo case in support of his habeas petition. Based on Hutson's investigation, appellant was indicted by the grand jury.

Leroy Gaitan, a constable in Erath County, testified that he had been contacted by appellant in reference to Gallardo. Furthermore, he testified that he met with appellant at appellant's office where the discussion centered on preventing Gallardo from being deported. Appellant advised Gaitan that one way to prevent deportation was to have someone talk to the victim's mother to convince her to drop the charges. Another involved Gaitan signing a letter to the Texas Board of Pardons and Paroles, Executive Clemency Section, in Austin, wherein Gaitan would vouch for Gallardo's character.

2

While talking with appellant, the subject came up that Gaitan was running for constable, an elected office. Subsequently, appellant requested Gaitan to speak to the mother of the victim in Gallardo's case. Gaitan testified that if he saw her he would let her know to come and talk with appellant. Thereafter, several phone calls ensued with appellant asking Gaitan if he had talked to the mother. The topic of a fundraiser for Gaitan was also broached. Finally, Gaitan met with a gentleman recommended by appellant to assist in a campaign fundraiser in Proctor, Comanche County, Texas. Appellant appeared to Gaitan prior to the actual meeting and wrote him a check in the amount of $100 for his campaign. He also handed Gaitan a folder that contained false affidavits prepared for the signatures of the victim in Gallardo's case and her mother.

According to Gaitan, appellant stated several times that the check was not a bribe but that he thanked him for helping out with talking to the victim's mother. Furthermore, appellant told Gaitan that it was urgent that the false affidavits be signed so he could file them with documents he planned on filing in court. According to Gaitan, appellant told him that Gallardo had funds available to Gaitan, the victim, and her mother. Appellant also advised Gaitan that there was a place available to him for his fundraiser in exchange for helping him. Gaitan began to feel uneasy about the situation and decided not to cash the check. Subsequently, he continued to receive phone calls from appellant at his home during which calls appellant assured him funds were available for both him and the victim's mother.

Gaitan eventually met with the victim's mother and advised her that appellant wanted to talk with her but he did not give her the affidavits. Instead, he turned the affidavits over to the Texas Rangers.

Joe Hutson, of the Texas Rangers, testified that he assists other law enforcement agencies and prosecutor's offices with criminal investigations. He was contacted by the District Attorney's office in Erath County concerning appellant. Based on his investigation, he believed appellant had offered money in exchange for the signed affidavits.

Appellant testified that he never told Gaitan that there were funds available to him or to the victim's mother. Appellant denied offering any benefits to Gaitan in exchange for his obtaining signatures on the affidavits. The jury convicted appellant of bribery.

### Issue One - Prosecutorial Misconduct

Appellant complains in his first issue of prosecutorial misconduct based on the following arguments: 1) the prosecutor had never attended law school according to the Texas State Bar, 2) the prosecutor offered not to prosecute Gaitan in exchange for his testimony, 3) the prosecutor failed to elect which theory the State was going to the jury on until after the State rested, 4) the evidence shows that the theory the State elected occurred in Comanche County and not Erath County and the prosecutor knew this, and 5) various statements made by the prosecutor in closing arguments were prejudicial. We overrule the issue for several reasons.

First, while appellant cites various instances of conduct undertaken by the prosecutor, he provides no authority illustrating or explanation developing how those instances evince impropriety. Why referring to appellant as "this guy" or using the phrase

4

"don't do this shuck and jive stuff" transgressed acceptable boundaries was left to our imagination. Instead, the sum and substance of appellant's discourse involved reference to laudable policies and concepts regarding the need for prosecutors to act with propriety. But, again, how those concepts applied to the prosecutor's actions or illustrated those actions to be improper went unmentioned. At best, appellant merely concluded that the prosecutor engaged in misconduct. Given this, we cannot say that appellant complied with Texas Rule of Appellate Procedure 38.1 and adequately briefed his complaints. Thus, they were waived. *Vasquez v. State*, 22 S.W.3d 28, 31 (Tex. App.–Amarillo 2000, no pet.) (holding that the failure to develop argument and cite to pertinent authority was inadequate briefing which resulted in the waiving of those issues).

We further note that various of appellant's protestations were simply wrong. For instance, and contrary to the insinuations otherwise, prosecutors may promise not to prosecute witnesses in exchange for their testimony. *Graham v. State*, 994 S.W.2d 651, 653-54 (Tex. Crim. App. 1999). So too did evidence of record indicate that acts undertaken by appellant occurred in both Erath and Comanche Counties; so, the allegation that the prosecutor opted to prosecute appellant in an improper county (*i.e.* Erath) was and is baseless.

And, as for the allegation that it was improper for the prosecutor to state at closing: "[a]nd I submit to you the choices in this case are clear, either [appellant] is correct, and Jason Cashon is a liar, Lee Roy Gaitan is a liar, Joe Hutson is a liar, and I'm a liar . . . ," we note that appellant had testified that the prosecutor was a liar. Thus, the prosecutor was entitled to mention that bit of evidence. *See Wesbrook v. State*, 29 S.W.3d 103, 115

5

(Tex. Crim. App. 2000) (recognizing that a prosecutor may discuss the evidence and answer opposing arguments during his summation).

### *Issue Two - Venue*

Appellant next contends that he was prosecuted in Erath County when the actual offense occurred in Comanche County.  This allegedly is so because Gaitan testified that it was during his meeting in Comanche County that appellant allegedly said that additional funds were available to him.  We overrule the issue.[1]

While there is evidence that some events occurred in Comanche County, Gaitan testified that he received several phone calls to his home in Erath County.  Those calls concerned the affidavits and the offer of additional funds.  Thus, and as previously mentioned, there was evidence that criminal conduct underlying the prosecution occurred in both counties.  So, prosecuting the matter in Erath County was appropriate.

---

[1] Venue may be established by direct or circumstantial evidence, *Black v. State*, 645 S.W.2d 789, 790 (Tex. Crim. App. 1983), and a jury may make reasonable inferences from the evidence to decide the issue of venue.  *Edwards v. State*, 97 S.W.3d 279, 285 (Tex. App.–Houston [14th Dist.] 2003, pet. ref'd).  We view all the evidence in the light most favorable to the verdict and then determine whether a rational trier of fact could have found venue was proper by a preponderance of the evidence.  *See Hooper v. State,* 214 S.W.3d 9, 13 (Tex. Crim. App. 2007);  TEX.CODE CRIM. PROC. ANN. art. 13.17 (Vernon 2005).  The jury, as the trier of fact, is the sole judge of the credibility of witnesses.  *See Moreno v. State*, 755 S.W.2d 866, 867 (Tex. Crim. App.1988).  The jury chooses whether or not to believe all or part of a witness's testimony.  *See id.*  We do not engage in a second evaluation of the weight and credibility of the evidence.  *Muniz v. State*, 851 S.W.2d 238, 246 (Tex. Crim. App. 1993); *Harris v. State*, 164 S.W.3d 775, 784 (Tex. App.–Houston [14th Dist.] 2005, pet. ref'd). Thus, if there is evidence establishing venue by a preponderance, we are not authorized to reverse the judgment on sufficiency of the evidence grounds.  *See Black v. State,* 645 S.W.2d at 791.  Furthermore, it is well settled that the "on or about" language of an indictment allows the State to prove a date other than the one alleged as long as the date proven is anterior to the presentment of the indictment and within the statutory limitation period.  *See* TEX. CODE CRIM. PROC. ANN. art. 21.02(6) (Vernon 2009); *Wright v. State*, 28 S.W.3d 526, 532 (Tex. Crim. App. 2000).

6

### *Issue Three - Speedy Trial*

Appellant contends that his constitutional rights were violated when he was denied a speedy trial.  We overrule the issue.

The right to a speedy trial encompasses not only the mere right to speed but also to an "orderly expedition" of the charge*.  United States v. Marion*, 404 U.S. 307, 313, 92 S.Ct. 455, 459-60, 30 L.Ed.2d 468 (1971); *State v. Munoz*, 991 S.W.2d 818, 821 (Tex. Crim. App.1999).  And, in determining whether both were afforded the accused, the United States Supreme Court announced in *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), that four indicia must be balanced.  They consist of the 1) length of the delay, 2) reason for the delay, 3) time at which the defendant asserted the right, and 4) prejudice, if any, suffered by the defendant due to the delay.  *Barker v. Wingo*, 407 U.S. at 530, 92 S.Ct. at 2192, 33 L.Ed.2d at 116-17; *Johnson v. State*, 954 S.W.2d 770, 771 (Tex. Crim. App. 1997).  Inherent in factors two and three is an assessment of the conduct of both the State and defendant.  *State v. Munoz*, 991 S.W.2d at 821 (citing *Barker*, 407 U.S. at 530, 92 S.Ct. at 2192, 33 L.Ed.2d at 118).  Furthermore, while "[n]o single . . . factor is a 'necessary or sufficient condition to the finding' of a speedy trial violation," *State v. Munoz*, 991 S.W.2d at 821; *Barker v. Wingo*, 407 U.S. at 533, 92 S.Ct. at 2193, 33 L.Ed.2d at 118, it is necessary that the court first find an undue delay.  Simply put, if there is no such delay, then there is no reason to address the remaining indicia.

Next, in analyzing the trial court's decision, the reviewing court balances the four factors anew.  *Johnson v. State*, 954 S.W.2d at 771.  That is, while the trial court's resolution of the historical facts particular to the case is entitled to our deference, *State v.*

7

*Munoz*, 991 S.W.2d at 821, application of those facts to the four indicia itemized above involves a question of law. *Johnson v. State*, 954 S.W.2d at 771. And, being a question of law, it undergoes review *de novo. State v. Munoz*, 991 S.W.2d at 821; *Johnson v. State*, 954 S.W.2d at 771. We now turn to the circumstances at bar.

### a. Length of Delay

The delay here exceeded three years. Given that the seventeen-month lapse existent in *Munoz* was deemed sufficiently prejudicial to trigger consideration of the remaining *Barker* factors, we conclude that the span before us does so as well.

### b. Reason for the Delay

The appellant once moved for continuance which undoubtedly postponed resolution of the cause to some extent. Furthermore, appellant's counsel requested to withdraw, which request was denied on March 31, 2008. Later, new defense counsel substituted for the old on May 2, 2008. The latter also filed the aforementioned motion for continuance. Eventually, trial was held on October 26, 2008, over six months after substitution of counsel. Yet, that fact did not then, and does not now, explain why trial was delayed as it was. Nor could the onus be placed upon the State for it had consistently announced that it was ready to proceed. Furthermore, we do not accept the appellant's insinuation that the State should be charged with the delay because it had the obligation to have its allegations tried. Admittedly, the State is the party seeking to convict appellant. As such, it must timely prepare for trial. Yet, preparing its case for trial is the only aspect of the proceeding over which it has control. It cannot legally or theoretically determine when trial will be had;

8

that task falls within the rather exclusive bailiwick of the trial judge. Thus, we cannot say that this factor weighs heavily in favor of appellant.

*c. Assertion of Right*

The fact that appellant invoked the right to a speedy trial in July of 2007 is undisputed. Appellant was arrested April 4, 2005, so over two years after his arrest appellant asserted his right to a speedy trial.[2] The failure to invoke the right earlier does not amount to waiver.

*d. Prejudice*

The last factor we address is prejudice. According to precedent, it must be assessed with an eye towards the interests which a speedy trial was designed to protect. *State v. Munoz*, 991 S.W.2d at 826. Those interests consist of 1) preventing oppressive pretrial incarceration, 2) minimizing the anxiety and concern of the accused, and 3) limiting the chance that the accused's defense will be impaired. *Id.* Of these indicia, the last is most important since the inability to adequately defend one's self affects the fairness of the entire system. *Id.* And, while unsaid by most courts, it is nonetheless a necessity that the prejudice in question emanate from the delay. In other words, there must be a causal relationship between the two. If this was not so, then logically the factor would be of no importance. *Anderson v. State,* 8 S.W.3d 387, 392 (Tex. App.–Amarillo 1999, pet. ref'd).

---

[2]Appellant's motion was framed as a motion to dismiss. This fact potentially weakens appellant's case, as "a dismissal instead of a speedy trial weakens [a speedy trial] claim because it shows a desire to have no trial instead of a speedy trial." *Parkerson v. State*, 942 S.W.2d 789, 791 (Tex. App.–Fort Worth 1997, no pet.). But "[e]ach case must turn on its own facts, and the particular relief a defendant seeks is but one fact to consider." *Phillips v. State*, 650 S.W.2d 396, 401 (Tex. Crim. App. 1983).

9

With the foregoing in mind, we turn to the record before us and immediately note that appellant was not incarcerated while awaiting adjudication. In fact, he bonded out of jail on the same day he was arrested. And, though appellant contends before us that the delay "made it impossible for [him] to obtain proper investigation and the locating of an expert," he fails to explain how his investigation was impeded or what expert was desired but could not be obtained. Nor does he explain about what the expert would have testified. This is of import because to show prejudice caused by lost testimony, an appellant must establish that the witness was unavailable at the time of trial, that the testimony of the supposed expert was relevant and material to the defense, and that due diligence was used to locate him. *Swisher v. State*, 544 S.W.2d 379, 382 (Tex. Crim. App.1976); *Parkerson v. State*, 942 S.W.2d 789, 792 (Tex. App.–Fort Worth 1997, no pet.). Again, appellant failed in that regard. So, we cannot say that the last factor bodes in his favor.

In sum, and upon considering the evidence of record in relation to the *Barker* elements, we cannot say that appellant was denied a speedy trial.

### *Issues Four and Five - Sufficiency of the Evidence to Support Conviction*

In his fourth and fifth issues, appellant contends that the evidence was legally and factually insufficient to support his conviction because 1) it failed to show that he offered any consideration to Gaitan to influence him to violate a duty of his position as a peace officer and 2) the false affidavits could not have affected the outcome of Gallardo's criminal case. The issues are overruled.

We review challenges to the sufficiency of the evidence under the standards discussed in *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) and

10

*Watson v. State,* 204 S.W.3d 404 (Tex. Crim. App. 2006). Next, a person commits bribery "if he intentionally or knowingly offers, confers, or agrees to confer on another, or solicits, accepts, or agrees to accept from another: . . . (3) any benefit as consideration for a violation of a duty imposed by law on a public servant or party official." TEX. PENAL CODE §36.02(a)(3) (Vernon 2003). Regarding the matter of Gaitan being a public servant or official, appellant says that there is no evidence "Gaitan represented himself to be a peace officer when he met with [the victim's mother] or that she had any idea that he was at that time a peace officer." The bribery statute says nothing which could lead one to logically conclude that the victim's mother had to know Gaitan was a peace officer.

Appellant also contends that because Gaitan was working as a "security guard" at a local college he was not a peace officer as contemplated by the statute. According to the record though, Gaitan was a campus police officer with Tarleton State University in Erath County. Being a campus officer, he was authorized to enforce traffic laws, make warrantless arrests for offenses committed in his presence, and otherwise carry out the duties of a peace officer anywhere in the county or counties in which the commissioning institution owns or controls property. TEX. EDUC. CODE ANN. §51.203 (Vernon 2006). This is some evidence upon which a rational jury could conclude beyond reasonable doubt that Gaitan was a peace officer for purposes of the bribery statute.

Appellant further contends that he did not ask Gaitan to do anything in connection with a duty imposed by law upon him in his capacity as a public servant. That peace officers are required by law to preserve the peace and suppress crime is beyond doubt. *See* TEX. CODE CRIM. PROC. ANN. art. 2.13(a) & (b)(1) (Vernon 2005) (so requiring). That executing a false affidavit may constitute a crime is also clear. *See* TEX. PENAL CODE ANN.

11

§37.02(a)(1) (Vernon 2003) (stating that a person commits an offense if, with intent to deceive and with knowledge of the statement's meaning, he makes a false statement under oath or swears to the truth of a false statement previously made and the statement is required or authorized by law to be made under oath); *Martin v. State*, 896 S.W.2d 336, 338-40 (Tex. App.–Amarillo 1995, no pet.) (discussing what constitutes the crime of perjury). So, Gaitan, a peace officer charged with the duty to suppress crime, was effectively solicited by appellant to assist another to engage in perjury. That, at the very least, is more than some evidence to afford a rational jury to conclude, beyond reasonable doubt, that appellant engaged in bribery. And, such a finding would not be manifestly unjust given the totality of the evidence.

Next, appellant contends that the evidence was insufficient to support bribery because the false affidavits in question could not be used to affect the outcome of a judicial proceeding. However, the accusation which the State elected to submit to the jury and which was submitted said nothing of attempting to influence a judicial proceeding. So, it does not matter whether the State proved that the documents could have been so used.

### Issue Six - Ineffective Assistance

Appellant finally asserts that he was denied the effective assistance of counsel. This allegedly was so because trial counsel 1) failed to object to inflammatory statements made by the prosecuting attorney which included his opinions of appellant's guilt, 2) failed to anticipate that Gaitan would change his testimony, 3) had a duty to investigate and not delegate his investigation to an investigator, 4) failed to subpoena the victim's mother who could refute Gaitan's testimony and 5) failed to prepare appellant to testify at trial. We overrule the issue for the following reasons.

12

First, appellant had the obligation to prove that counsel was deficient and that the deficiency caused prejudice. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Smith v. State,* 286 S.W.3d 333, 342 (Tex. Crim. App. 2009). With regard to the latter element, he simply discussed aspects of the law and then

> suggest[ed] that the totality of counsel's constitutionally deficient performance prejudiced his defense and that counsel's errors were so serious that he was actually undermining the proper functioning of the adversarial process to the extent that the trial cannot be relied on as having produced just results and that but for Mr. Morris' performance the result would have been different.

No attempt was made to explain or establish why that would be so. Making a mistake, assuming one was made, does not *ipso facto* create prejudice. Nor will we assume that it does. Appellant had to establish prejudice, and he did not.

Second, appellant's factual allegations regarding counsel's failure to adequately investigate and prepare for trial and subpoena witnesses contain no citation to the appellate record. Indeed, they are merely allegations uttered by appellant in his brief, and as such are not evidence which we can consider. *Jones v. State,* 478 S.W.2d 937, 938 fn.1( Tex. Crim. App. 1972); *Robertson v. State*, 168 Tex. Crim. 35, 322 S.W.2d 620, 622 (1959) (stating that allegations contained in a brief are not evidence). Nor are the copies of purported emails from counsel susceptible to consideration simply because appellant attached them to his brief. *See Anderson v. State*, 445 S.W.2d 752, 754 (Tex. Crim. App. 1969) (holding that merely attaching documents to a brief does not make them evidence).

Finally, withholding objection to closing argument is frequently a matter of legitimate trial strategy. *Hubbard v. State*, 770 S.W.2d 31, 45 (Tex. App.–Dallas 1989, pet. ref'd). Thus, evidence of counsel's strategy, if any, was and is crucial to determining whether he

13

was ineffective. Yet, nothing of record indicates why counsel withheld complaint about the argument appellant deemed objectionable. Without such evidence, we cannot say that the record before us sufficiently rebuts the strong presumption that counsel exercised reasonably professional judgment. *Thompson v. State*, 9 S.W.3d 808 (Tex. Crim. App. 1999).

Having overrule each issue, we affirm the judgment of the trial court.


Brian Quinn
Chief Justice


Do not publish.