**Affirmed and Memorandum Opinion filed December 5, 2024**



**In The**

# Fourteenth Court of Appeals

---

**NO. 14-23-00256-CR**
**NO. 14-23-00257-CR**

---

## EX PARTE PAUL HOUSTON LAVALLE, Appellant

---

**On Appeal from the 56th District Court**
**Galveston County, Texas**
**Trial Court Cause Nos. 19-CR-0918-83-1 & 19-CR-0918-83-2**

---

## MEMORANDUM OPINION

Appellant Paul Houston LaValle appeals the denial of his applications for habeas corpus in case numbers 14-23-00256-CR (trial court cause number 19-CR-0918-83-2) and 14-23-00257-CR (trial court cause number 19-CR-0918-83-1). Appellant contends (1) he is legally innocent of the charged offense; (2) the trial court's findings of fact and conclusions of law were clearly erroneous; (3) he was denied effective assistance of counsel at trial; and (4) he was denied effective assistance of counsel on appeal. We affirm.

BACKGROUND

During an investigation regarding whether he furnished alcohol to a minor at his house in October 2018, Appellant prepared two affidavits that contained false information about whether he had furnished alcohol to minors Sandy[1] and Deborah. One affidavit was signed by Sandy, and the other affidavit was signed by Appellant's acquaintance Jill. Appellant's attorney presented the two affidavits to the police during the investigation. Once the police found out that the affidavits purporting to exculpate Appellant contained false statements, Appellant was charged in two counts with tampering with or fabricating physical evidence under section 37.09(a)(2) of the Texas Penal Code. *See* Tex. Penal Code Ann. § 37.09(a)(2).

A jury trial was held, and the jury charge instructed the jury as to each count as follows: "Now, if you find . . . [Appellant] did then and there, knowing that an investigation was in progress, namely furnishing alcohol to a minor, intentionally or knowingly make and/or present a document, namely the affidavit of [Sandy/Jill], with knowledge of its falsity and with intent to affect the course or outcome of the furnishing alcohol to minor investigation, then you will find [Appellant] guilty of Tampering with Physical Evidence as charged in the Indictment." The jury found Appellant guilty as charged in both counts, and the trial court placed Appellant on community supervision for five years on both counts. Appellant filed an appeal challenging the legal sufficiency of his conviction, and this Court affirmed his third-degree felony conviction for tampering with or fabricating physical evidence. *See Lavalle v. State*, No. 14-20-00245-CR, 2021 WL 3924002, at *1-9 (Tex. App.—Houston [14th Dist.] Sept. 2, 2021, pet. ref'd) (mem. op., not designated for publication).

---

[1] To protect their identity, we continue to refer to minors using fictitious names.

In December 2022, Appellant filed two applications for writ of habeas corpus, seeking relief under article 11.072 of the Texas Code of Criminal Procedure.[2] Appellant's application for writ of habeas corpus in case number 14-23-00256-CR (19-CR-0918-83-2) challenged his conviction and sentence relating to count one of the indictment, and his application in case number 14-23-00257-CR (19-CR-0918-83-1) challenged his conviction and sentence relating to count two of the indictment. Because Appellant asserted that he was denied effective assistance by his trial and appellate counsel, the trial court issued an Order designating Issues of Fact and directing Applicant's Attorney's to submit affidavits. Both attorneys submitted their respective affidavits. In February 2023, the State filed an answer, and Appellant filed his reply. On February 17, 2023, the trial court signed findings of fact and conclusions of law and denied both of Appellant's applications for writ of habeas corpus.[3] Appellant filed timely notices of appeal.

## ANALYSIS

Appellant presents four issues on appeal, arguing (1) he is legally innocent of the charged offense; (2) the trial court's findings of fact and conclusions of law were clearly erroneous; (3) he was denied effective assistance of counsel at trial; and (4) he was denied effective assistance of counsel on appeal. We address each issue in turn.

## I. Standard of Review

The writ of habeas corpus is "an extraordinary remedy" to be used when one

---

[2] "This article establishes the procedures for an application for a writ of habeas corpus in a felony or misdemeanor case in which the applicant seeks relief from an order or a judgment of conviction ordering community supervision." Tex. Code Crim. Proc. Ann. art. 11.072, § 1.

[3] Appellant asserts in his brief that his "probation was terminated early by the trial court on 09/22/23."

is restrained in one's liberty. *Ex parte Smith*, 444 S.W.3d 661, 666 (Tex. Crim. App. 2014); *Ex parte Onyeahialam*, 558 S.W.3d 740, 743 (Tex. App.—Houston [14th Dist.] 2018, pet. ref'd). Article 11.072 of the Code of Criminal Procedure establishes the procedure for an applicant to seek habeas corpus relief "from an order or a judgment of conviction ordering community supervision." Tex. Code Crim. Proc. Ann. art. 11.072, § 1; *Ex parte Nelson*, 546 S.W.3d 742, 746 (Tex. App.—Houston [1st Dist.] 2018, no pet.); *Ex parte Reed*, 402 S.W.3d 39, 41 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd). This court has jurisdiction to consider appeals of denials of habeas corpus relief in cases in which community supervision has been ordered under article 11.072. Tex. Code Crim. Proc. Ann. art. 11.072, § 8; *Ex parte Nelson*, 546 S.W.3d at 746; *Ex parte Reed*, 402 S.W.3d at 41.

We review a ruling on an application for writ of habeas corpus for an abuse of discretion. *Ex parte Allen*, 619 S.W.3d 813, 816 (Tex. App.—Houston [14th Dist.] 2020, pet. ref'd); *see Ex parte Garcia*, 353 S.W.3d 785, 787 (Tex. Crim. App. 2011). We decide whether a trial court abused its discretion by determining whether the court acted without reference to any guiding rules or principles, or in other words, whether the court acted arbitrarily or unreasonably. *Ex parte Allen*, 619 S.W.3d at 816; *Ex parte Wolf*, 296 S.W.3d 160, 166 (Tex. App.—Houston [14th Dist.] 2009, pet. ref'd). A trial court abuses its discretion if its decision lies outside the zone of reasonable disagreement. *Ex parte Onyeahialam*, 558 S.W.3d at 743; *Ex parte Wolf*, 296 S.W.3d at 166. An applicant seeking post-conviction habeas corpus relief shoulders the burden to establish by a preponderance of the evidence that the facts entitle the applicant to relief. *Ex parte Richardson*, 70 S.W.3d 865, 870 (Tex. Crim. App. 2002); *Ex parte Reed*, 402 S.W.3d at 41.

In reviewing the trial court's ruling on an application for habeas relief, we

examine the evidence in the habeas record in the light most favorable to the trial court's ruling. *Kniatt v. State*, 206 S.W.3d 657, 664 (Tex. Crim. App. 2006); *Ex parte Allen*, 619 S.W.3d at 816. The trial court is the sole factfinder in a post-conviction application for writ of habeas corpus filed under article 11.072. *Ex parte Torres*, 483 S.W.3d 35, 42 (Tex. Crim. App. 2016). We afford almost complete deference to the habeas court's determination of historical facts supported by the record, especially when those factual findings rest upon an evaluation of the witnesses' credibility and demeanor. *Ex parte Allen*, 619 S.W.3d at 816; *Ex parte Reed*, 402 S.W.3d at 42. Findings of historical fact made at the trial level are still given deference on appeal even when the findings are based solely on affidavits. *Ex parte Sanchez*, 625 S.W.3d 139, 144 (Tex. Crim. App. 2021).

We apply the same deference to review the habeas court's application of law to fact questions if resolving those determinations rests upon an evaluation of credibility and demeanor. *Ex parte Allen*, 619 S.W.3d at 816; *Ex parte Reed*, 402 S.W.3d at 42. However, if the outcome of those ultimate questions turns upon an application of legal standards, we review the habeas court's determination *de novo*. *Ex parte Allen*, 619 S.W.3d at 816; *Ex parte Reed*, 402 S.W.3d at 42. We will uphold the trial court's ruling as long as it is correct on any theory of law applicable to the case. *Ex parte Allen*, 619 S.W.3d at 816; *Ex parte Onyeahialam*, 558 S.W.3d at 743.

## II.    No Evidence of Charged Offense

For a court to reach the merits of an applicant's claim on habeas corpus, the applicant's claim must be cognizable on habeas corpus. *Ex parte Reed*, 402 S.W.3d at 42; *see Ex parte Perales*, 215 S.W.3d 418, 419-20 (Tex. Crim. App. 2007). A writ of habeas corpus ordinarily may not be used to relitigate matters that

already were raised and rejected on direct appeal. *Ex parte Brown*, 205 S.W.3d 538, 546 (Tex. Crim. App. 2006); *Ex parte Reed*, 402 S.W.3d at 42. Additionally, it is well settled that a challenge to the sufficiency of the evidence is not cognizable on an application for a post-conviction writ of habeas corpus. *Ex parte Perales*, 215 S.W.3d at 419; *Ex parte Grigsby*, 137 S.W.3d 673, 674 (Tex. Crim. App. 2004). "However, a claim of no evidence is cognizable because '[w]here there has been no evidence upon which to base a conviction, a violation of due process has occurred and the conviction may be attacked collaterally in a habeas corpus proceeding.'" *Ex parte Perales*, 215 S.W.3d at 420 (quoting *Ex parte Coleman*, 599 S.W.2d 305, 307 (Tex. Crim. App. 1978)). "If the record is devoid of evidentiary support for a conviction, an evidentiary challenge is cognizable on a writ of habeas corpus." *Ex parte Perales*, 215 S.W.3d at 420.

In his first issue, Appellant contends: "There is no evidence that Appellant was the maker of the affidavit in question. Appellant is legally innocent of the charged offense. The 'maker' provision of Tex. Penal Code § 37.09(a)(2) does not apply to an affidavit to [sic] which the accused does not sign. Appellant was convicted under a legally inadequate theory." Appellant argues he cannot be guilty "as a matter of law" of the tampering with or fabricating physical evidence offense as charged. He quotes the jury charge's application paragraph[4] and contends that to "make" an affidavit means to be its signer because "affidavit" is defined in section 312.011(1) of the Texas Government Code as "a statement in writing of a fact or facts signed by the party making it, sworn to before an officer authorized to

---

[4] The application paragraph states: "Now, if you find . . . [Appellant] did then and there, knowing that an investigation was in progress, namely furnishing alcohol to a minor, intentionally or knowingly make and/or present a document, namely the affidavit of [Sandy/Jill], with knowledge of its falsity and with intent to affect the course or outcome of the furnishing alcohol to minor investigation, then you will find [Appellant] guilty of Tampering with Physical Evidence as charged in the Indictment."

administer oaths, and officially certified to by the officer under his seal of office."[5] Appellant claims the hypothetically correct jury charge would have "contained the definition of 'affidavit' within" section 312.011(1). According to Appellant, it "is uncontroverted that Appellant was not the signer of the affidavits. Therefore, under Texas Government Code §312.011(1), he was not the 'maker' of the affidavits and his conviction upon this theory was void as a matter of law" and "no rational jury could find each essential element of the charged offense beyond a reasonable doubt."

The State responds that the sufficiency of the evidence is measured by the elements of the offense as defined by the hypothetically correct jury charge for the case, and a hypothetically correct jury charge in this case would not "include the Government Code's definition of the word 'affidavit' and/or Appellant's proposed definition of the word 'make'" because the word "affidavit" does not appear in section 37.09 and "Appellant's definition of 'make,' which would permit a conviction only where the defendant actually signed the affidavit, is unduly narrow" and "inconsistent with the expansive terminology of this penal statute."

The sufficiency of the evidence should be measured by the elements of the offense as defined by the hypothetically correct jury charge for the case, which would be a charge that "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *See Malik v. State*, 953 S.W.2d 234, 236 (Tex. Crim. App. 1997) (en banc). A hypothetically correct jury charge is not required to "track exactly all of the allegations in the indictment" and "may disregard certain unnecessarily pled indictment allegations." *Gollihar v.*

---

[5] Tex. Gov't Code Ann. § 312.011(1).

*State*, 46 S.W.3d 243, 253 (Tex. Crim. App. 2001) "If a jury instruction includes the elements of the charged crime but incorrectly adds an extra, made-up element, a sufficiency challenge is still assessed against the elements of the charged crime, regardless of the source of the extra element." *Ramjattansingh v. State*, 548 S.W.3d 540, 552 (Tex. Crim. App. 2018).

As applicable in his case, a person commits the third-degree felony offense of tampering with or fabricating physical evidence if, (1) knowing that an investigation is in progress; (2) he makes, presents, or uses a document or thing with knowledge of its falsity; and (3) acts with the intent to affect the course or outcome of the investigation. *Lavalle*, 2021 WL 3924002, at *6; *see* Tex. Penal Code Ann. § 37.09(a)(2); *Wilson v. State*, 311 S.W.3d 452, 464 (Tex. Crim. App. 2010).

Neither in the trial court nor on appeal did Appellant cite authority supporting his contention that because he was not the signer and, thus, not the maker of the affidavits as defined in section 312.011(1), he cannot be a person who made the documents as provided in section 37.09(a)(2).[6]  Additionally, Appellant does not explain why under section 37.09(a)(2) Appellant had to have signed the affidavits in order to have made the documents and, correspondingly, why the Government Code definition of "affidavit" is an essential element of the charged offense that would be contained in a hypothetically correct jury charge and the State would be required to prove.  He contends that if a word or term is defined in a statute, that statutory definition must be submitted to the jury so that the Government Code definition of "affidavit" — being a statutory definition — would be included in a hypothetically correct jury charge.  But Appellant cites no

---

[6] Although Appellant states that eight courts of appeals "applied the Texas Government Code §312.011(1) definition of 'affidavit' to criminal cases," the cited cases did not mention or apply the definition in the context of section 37.09.

authority, and we have found none, to support his blanket assertion that every statutory definition of a word or term defined in any Texas code must be included in a criminal jury charge.[7]

Further, contrary to Appellant's assertion, not all definitions constitute elements of an offense. *See Haagensen v. State*, 346 S.W.3d 758, 762 (Tex. App.—Texarkana 2011, no pet.). For example, the Texas Court of Criminal Appeals held in *Gray v. State* that the definition of intoxicant is not an element of the offense of driving while intoxicated, explaining that "[t]he intoxicant is not the forbidden conduct, the required culpability, any required result, or the negation of any exception to the offense. The mere fact that the DWI statute separately defines intoxication does not automatically elevate the intoxicant to the status of an element of the offense." 152 S.W.3d 125, 132 (Tex. Crim. App. 2004).

Section 1.07(a)(22) provides that forbidden conduct, the required culpability,

---

[7] Appellant cites *Lindsay v. State*, 102 S.W.3d 223 (Tex. App.—Houston [14th Dist.] 2003, pet. ref'd), *Hunter v. State*, 92 S.W.3d 596 (Tex. App.—Waco 2002, pet. ref'd), *abrogated by Smith v. State*, 207 S.W.3d 787 (Tex. Crim. App. 2006), and *Roise v. State*, 7 S.W.3d 225 (Tex. App.—Austin 1999, pet. ref'd). However, none of these cases support Appellant's contention. *See Lindsay*, 102 S.W.3d at 230 (finding the trial court erred in not including in the jury charge the statutory definition for "criminal responsibility" in Texas Penal Code section 7.02(a); the court made no statement that if a word or term is defined in a statute, that statutory definition must be submitted to the jury); *Hunter*, 92 S.W.3d at 601-02 ("rely[ing] on Government Code's definition of [affidavit] for guidance" in finding that "the term 'sworn affidavit' used in article 18.01(b) of the Code of Criminal Procedure requires a writing signed by the affiant, sworn to before an officer authorized to administer oaths, and officially certified to by the officer under his seal of office"; the *Hunter* court did not address who is a maker of an affidavit nor is there a statement that if a word or term is defined in a statute, that statutory definition must be submitted to the jury; moreover, the Court of Criminal Appeals in *Smith*, 207 S.W.3d at 791-92, disagreed with the *Hunter* court's finding and held "that that the failure to sign the warrant affidavit does not invalidate the warrant if other evidence proves that the affiant personally swore to the truth of the facts in the affidavit before the issuing magistrate"); *Roise*, 7 S.W.3d at 242 (finding that the phrase "lewd exhibition of genitals" has not been statutorily defined and the trial court was not required to define the phrase for the jury; there is no statement that if a word or term is defined in a statute, that statutory definition must be submitted to the jury).

9

any required result, and the negation of an exception form elements of an offense. Tex. Pen. Code Ann. § 1.07(a)(22) (stating "'Elements of offense' means (A) the forbidden conduct; (B) the required culpability; (C) any required result; and (D) the negation of any exception to the offense"). Here, the definition of "affidavit" does not describe the forbidden conduct, the required culpability, any required result, or the negation of an exception to the offense of tampering with or fabricating physical evidence. The Government Code definition of "affidavit" is not an essential element of the offense and a hypothetically correct jury charge would not have included the definition.

We reject Appellant's attempt to significantly narrow the meaning of "make" in section 37.09(a)(2) by importing the Government Code definition of "affidavit" when such a narrowing is contrary to the goal and purpose of section 37.09. The purpose of section 37.09 "is to maintain the honesty, integrity, and reliability of the justice system" and to prohibit anyone from "creating, destroying, forging, altering or otherwise tampering with evidence that may be used in an official investigation or judicial proceeding." *Wilson*, 311 S.W.3d at 458 (citations omitted). Because the Government Code definition of "affidavit" would not be included in a hypothetically correct jury charge, the State was not required to prove that Appellant signed the affidavits in order to have made the documents with knowledge of their falsity under section 37.09(a)(2).

Appellant's contention that "[t]he 'maker' provision of Tex. Penal Code § 37.09(a)(2) does not apply to an affidavit to [sic] which the accused does not sign" and that he "was convicted under a legally inadequate theory" is without merit.[8] Also, we already determined on direct appeal that the evidence is legally sufficient

---

[8] In light of our disposition, we need not address Appellant's remaining arguments in his first issue.

to support Appellant's conviction.

We overrule Appellant's first issue.

## III. Erroneous and Unsupported Findings of Fact and Conclusions of Law

In his second issue, Appellant states the trial court's findings of fact and conclusions of law were clearly erroneous and unsupported by the record. He challenges findings 15 to 18, 21, 22, 26, and 27, which we will address below.

### 1. Findings of Fact 15, 16, and 17

15. The Government Code definition of "affidavit" applies only for the purpose of construing civil statutes. *See id.*, § 312.001 ("This subchapter applies to the construction of all civil statutes."). That definition does not apply when construing the provisions of the Texas Penal Code, which does not contain any comparable definition.

16. The Government Code definition of "affidavit" cannot play any legitimate role in the construction of Penal Code section 37.09, a criminal statute that does not even contain the word "affidavit."

17. Section 37.09 does utilize the word "make[]," but that term—as used in that statute—is not defined in the Penal Code or in any other statute. To apply the narrow definition suggested by Applicant would be inconsistent with the expansive terminology of section 37.09.

Appellant argues that "[f]indings 15, 16, and 17 are clearly erroneous" because the "Government Code definition of 'affidavit' applies for purposes of construing both civil and criminal statutes." However, assuming without deciding that the findings are erroneous, they are irrelevant in light of our discussion and disposition of Appellant's first issue. *See Ex parte Reed*, 271 S.W.3d 698, 728 (Tex. Crim. App. 2008) ("[W]hen we determine that the trial judge's findings and conclusions that are supported by the record require clarification or supplementation, we may exercise our judgment and make findings and conclusions that the record supports and that are necessary to our independent review and ultimate disposition. However, where a given finding or conclusion is immaterial to the issue or is

11

irrelevant to our disposition, we may decline to enter an alternative or contrary finding or conclusion."); *Ex parte Yusafi*, No. 09-08-00301-CR, 2008 WL 6740798, at *1 (Tex. App.—Beaumont Aug. 26, 2009, pet. ref'd) (mem. op., not designated for publication) ("Should a given finding or conclusion be immaterial to the issue or irrelevant to our disposition, we may decline to consider said finding or conclusion.").

## 2. Finding of Fact 18

18. The indictment does refer to affidavits. However, Applicant has cited no authority holding that the Government Code definition of "affidavit" can properly be used, in a criminal case, to assess whether there was "no evidence" (Appl. at 15) that an applicant did "make" affidavits.

Appellant contends that finding 18 is clearly erroneous because "Appellant cited five appellate cases to the trial court in his response to the State's answer to his writs of habeas corpus." Although Appellant cited five courts of appeals cases in his reply, none of these cases support his contention that a hypothetically correct jury charge would include the Government Code's definition of "affidavit" or that the definition should be used to define the meaning of "make" in section 37.09(a)(2).

The sole case cited by Appellant involving a provision in the Penal Code is *Martin v. State*, 896 S.W.2d 336 (Tex. App.—Amarillo 1995, no pet.). There, the court paraphrased the Government Code definition of "affidavit" in a footnote in the context of its discussion that, when the legislature enacted the perjury statute in section 37.02 of the Penal Code, the legislature combined the previously distinct crimes of perjury and false swearing. *Id*. at 338. Before the enactment of section 37.02, the two crimes were almost identical but for the motivation for the oath; if the oath taken was mandated by law, the falsehood constituted perjury, if not, it

12

was false swearing. *Id*. The court stated that by enacting section 37.02, "the legislature sought to vitiate the difference inherent in the old law and criminalize as perjury 'all [false] statements authorized to be made under oath whether or not an oath is required by law.'" *Id*. (quoting Tex. Penal Code Ann. § 37.04, Prac. Comment.). The court emphasized:

> More importantly, gone was the expressed reference to the word "affidavit." Under article 310 of the old code, the false statement prohibited by the legislature consisted of a "declaration or affidavit." Now, "any representation of fact" constitutes a statement. In adopting that definition, the legislature liberated the term from the restrictive formalities accompanying an "affidavit" and expanded the category of utterances potentially criminal.

*Id*. at 338-39. Only after stating that the legislature liberated the term from the formalities accompanying an "affidavit" did the court mention the Government Code definition. The definition was inconsequential to the court's decision.

The other four cases Appellant cited do not involve statutory interpretation of a Penal Code section. In *Venable v. State*, the court of appeals addressed whether a supposed business records affidavit containing neither a statement of personal knowledge nor a proper notarial seal could for purposes of Texas Rule of Evidence 803(6) be an affidavit that complies with Texas Rule of Evidence 902(10). 113 S.W.3d 797, 800 (Tex. App.—Beaumont 2003, pet. ref'd). The court held that by "failing to state that it is made on the personal knowledge of the witness, and by failing to be properly notarized, [the purported business records affidavit] complies with neither the plain language nor the obvious purpose of the cited rules, to wit, assuring the trustworthiness of the information offered into evidence, without the necessity of calling of a live witness for authentication." *Id*.

In *Hunter v. State*, the court of appeals relied on the Government Code definition of "affidavit" for guidance in finding that "the term 'sworn affidavit'

used in article 18.01(b) of the Code of Criminal Procedure requires a writing signed by the affiant, sworn to before an officer authorized to administer oaths, and officially certified to by the officer under his seal of office." 92 S.W.3d 596, 601-02 (Tex. App.—Waco 2002, pet. ref'd), *abrogated by Smith v. State*, 207 S.W.3d 787 (Tex. Crim. App. 2006). Moreover, the Court of Criminal Appeals in *Smith* disagreed with the *Hunter* court's finding and held "that that the failure to sign the warrant affidavit does not invalidate the warrant if other evidence proves that the affiant personally swore to the truth of the facts in the affidavit before the issuing magistrate." 207 S.W.3d at 791-92.

In *Scott v. State*, the court of appeals considered whether an Appellant's unsworn indigence motion to obtain a free appellate record constituted an affidavit under Texas Rule of Appellate Procedure 20.2. 80 S.W.3d 184, 190 (Tex. App.—Waco 2002, pet. ref'd). Citing the Government Code definition of "affidavit", the court found the defendant's "motion arguably does not satisfy Rule 20.2 because he did not verify it 'before an officer authorized to administer oaths.'" *Id*. at 194. However, the court recognized that a notary public or other officer authorized to administer oaths would probably not affix his seal to certify that the defendant had made the "affidavit" in issue given his refusal to "swear" or "affirm" on religious grounds. *Id*. at 194-95. To give effect to the defendant's appeal, the court excused the defendant from "strict adherence to the requirement that his motion be 'sworn to before an officer authorized to administer oaths.'" *Id*. at 195.

Finally, in *Arochi v. State*, the court of appeals addressed the defendant's complaint that the State's affidavits controverting his affidavit in support of his change of venue motion "were deficient in form because the notary improperly filled out" the State's affidavits. No. 05-16-01208-CR, 2018 WL 3372919, at *18 (Tex. App.—Dallas July 11, 2018, pet. ref'd) (mem. op., not designated for

14

publication). Relying on the Government Code definition of "affidavit," the court determined "that this did not affect the validity of the affidavits" when each affidavit "contains the signature of the affiant, states it was 'sworn to and subscribed before' the notary, and was officially certified to by the notary with her seal of office." *Id*.

Accordingly, the trial court's finding 18 is not clearly erroneous.

### 3. Findings of Fact 21, 22, 26, and 27

21. This Court would have erred if it had included the Government Code definition of "affidavit," and/or Applicant's definition of "make," in the charges. Such definitions, which do not appear in the Penal Code or in the Code of Criminal Procedure, would have amounted to an improper comment on the weight of the evidence. *See* TEX. CODE CRIM. PROC. art. 36.14.

22. Because the jury charges did not define the term "affidavit" or the term "make," the jurors could properly have construed those terms to have any meaning that is acceptable in common parlance. *See Medford v. State*, 13 S.W.3d 769, 771-72 (Tex. Crim. App. 2000).

\* \* \*

26. That argument lacks merit because the Government Code definition of "affidavit" does not apply in this criminal case and because that definition, if it did apply here, would not render the State's "make[]" theory "legally inadequate." If that definition did apply here, the "make[]" theory would, at worst, merely be "factually inadequate." *Griffin v. United States*, 502 U.S. 46, 59 (1991). A claim of "factual inadequacy" or legal insufficiency would not be cognizable in this habeas proceeding. *See Ex parte Perales*, 215 S.W.3d 418, 419 (Tex. Crim. App. 2007).

27. Even if there was no evidence supporting the State's "make[]" theory, Applicant has not argued or established that there was no evidence supporting the State's alternative theory, i.e., that Applicant "did then and there . . . intentionally or knowingly . . . present" each of the affidavits. CR 235, 241. In other words, Applicant's no-evidence claim does not invalidate the State's other theory of guilt.

Appellant asserts that findings 21 and 22 are clearly erroneous because the trial court was required to include the Government Code definition of "affidavit" in the jury charge. He also asserts that finding 26 is clearly erroneous because the definition of "affidavit" in Government Code section 312.011 "renders Appellant's charges 'legally inadequate' as opposed to 'factually inadequate.'" Finally, Appellant contends that finding 27 is clearly erroneous because "this Court is not in a position to decide which of the two theories the jurists [sic] convicted him on, Appellant need only show that one of those theories was legally inadequate."

However, assuming without deciding that the findings are erroneous, they are irrelevant in light of our discussion and disposition of Appellant's first issue. *See Ex parte Reed*, 271 S.W.3d at 728 ("[W]hen we determine that the trial judge's findings and conclusions that are supported by the record require clarification or supplementation, we may exercise our judgment and make findings and conclusions that the record supports and that are necessary to our independent review and ultimate disposition. However, where a given finding or conclusion is immaterial to the issue or is irrelevant to our disposition, we may decline to enter an alternative or contrary finding or conclusion."); *Ex parte Yusafi*, 2008 WL 6740798, at *1 ("Should a given finding or conclusion be immaterial to the issue or irrelevant to our disposition, we may decline to consider said finding or conclusion.").

We overrule Appellant's second issue.

## IV. Ineffective Assistance of Counsel

In his third and fourth issues, Appellant complains that he was denied effective assistance of counsel at trial and on appeal in violation of the Sixth Amendment to the United States Constitution.

### 1. Applicable Law

Claims about ineffective assistance of counsel are cognizable on habeas corpus. *Ex parte McCullough*, 966 S.W.2d 529, 532 n.1 (Tex. Crim. App. 1998) (en banc) (citing *Ex parte Welborn*, 785 S.W.2d 391 (Tex. Crim. App. 1990) (en banc) and *Ex parte Wilson*, 716 S.W.2d 953 (Tex. Crim. App. 1986) (en banc)).

Criminal defendants have a constitutional right to assistance of counsel. *See* U.S. Const. amend. VI; *Villarreal v. State*, No. PD-0048-20, 2024 WL 4446740, at *4 (Tex. Crim. App. Oct. 9, 2024); *Pelcastre v. State*, 654 S.W.3d 579, 590 (Tex. App.—Houston [14th Dist.] 2022, pet. ref'd). This right necessarily includes the right to reasonably effective assistance of counsel. *See Strickland v. Washington*, 466 U.S. 668, 686 (1984); *Hernandez v. State*, 726 S.W.2d 53, 55 (Tex. Crim. App. 1986) (en banc). "'Designed to remedy any imbalance in our adversary system, the Sixth Amendment promises that an accused is entitled to defense counsel in all criminal prosecutions.'" *Villarreal*, 2024 WL 4446740, at *4 (quoting *Hidalgo v. State*, 983 S.W.2d 746, 752 (Tex. Crim. App. 1999)). This right to effective assistance extends to the first direct appeal. *Evitts v. Lucey*, 469 U.S. 387, 395-96 (1985); *Ward v. State*, 740 S.W.2d 794 (Tex. Crim. App. 1987) (en banc).

To establish that counsel rendered ineffective assistance, a habeas applicant must demonstrate, by a preponderance of the evidence, that (1) his counsel's performance was deficient, in that it fell below an objective standard of reasonableness, and (2) there is a reasonable probability that the result of the proceeding would have been different but for counsel's deficient performance. *See Strickland*, 466 U.S. at 687-88; *Ex parte White*, 160 S.W.3d 46, 51 (Tex. Crim. App. 2004). Failure to satisfy either prong of the *Strickland* test defeats an ineffective assistance claim. *Strickland*, 466 U.S. at 697; *Fernandez v. State*, 580

17

S.W.3d 470, 472 (Tex. App.—Houston [14th Dist.] 2019, no pet.).

To satisfy the first prong, an appellant must prove by a preponderance of the evidence that his counsel's performance fell below an objective standard of reasonableness under the prevailing professional norms. *Strickland*, 466 U.S. at 688; *Lopez v. State*, 343 S.W.3d 137, 142 (Tex. Crim. App. 2011). To determine whether the defendant has established this, we must examine the totality of counsel's conduct at the time of the representation, and we must evaluate the reasonableness of counsel's actions from counsel's perspective at the time of that representation, without focusing on isolated acts or omissions. *See Strickland*, 466 U.S. at 689; *Robertson v. State*, 187 S.W.3d 475, 482 (Tex. Crim. App. 2006); *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999).

A trial counsel's performance is subject to a "highly deferential" review and there "is a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance." *Andrews v. State*, 159 S.W.3d 98, 101 (Tex. Crim. App. 2005). Therefore, any allegation of ineffective assistance must be firmly founded in the record. *Menefield v. State*, 363 S.W.3d 591, 592 (Tex. Crim. App. 2012).

To satisfy the second *Strickland* prong, an appellant must show a reasonable probability that, but for his counsel's deficient actions, the result of the proceeding would have been different. *See Nava v. State*, 415 S.W.3d 289, 308 (Tex. Crim. App. 2013); *Lopez*, 343 S.W.3d at 142. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Nava*, 415 S.W.3d at 308; *Lopez*, 343 S.W.3d at 142.

## 2. Trial Counsel

Appellant argues in his third issue that he was denied effective assistance of

trial counsel because his trial counsel failed to (1) "move for a continuance when the State arraigned the Appellant upon an indictment that had been superseded"; (2) "educate himself to [sic] the law of affidavits and fail[ed] to assert the defense set out in Texas Government Code § 312.011(1)"; (3) request a jury instruction on the definition of "maker" of an affidavit; and (4) "argue to the jury that Appellant was not and could not be the maker of the affidavits in question."

### a.    Continuance

Appellant first claims that his trial counsel's performance was deficient because trial counsel failed to move for a continuance upon the State reading and arraigning Appellant on a superseded indictment.   Appellant claims his trial counsel "should have expressed his surprise at the State having abandoned the superseding indictment," and "failure to file a motion for continuance resulted in Appellant being blindsided by the State's evidence and prevented him from asserting an adequate defense to the charges."

Article 29.13 of the Texas Code of Criminal Procedure provides that the trial court may grant a continuance after trial has begun "when it is made to appear to the satisfaction of the court that by some unexpected occurrence since the trial began, which no reasonable diligence could have anticipated, the applicant is so taken by surprise that a fair trial cannot be had."  Tex. Code Crim. Proc. Ann. art. 29.13; *Guerrero v. State*, 528 S.W.3d 796, 799 (Tex. App.—Houston [14th Dist.] 2017, pet. ref'd).

In his affidavit, trial counsel stated as follows:

The reason that Affiant failed to move for a continuance when the State arraigned the Applicant upon an indictment that had been superseded was that those were the direct instructions of the Applicant to Affiant, as his counsel.  Shortly after the arraignment, when both Applicant and Affiant realized that the State had arraigned Applicant

19

on the superseded indictment, Affiant presented several potential options to the Applicant. A motion for continuance was among the options presented, as was Applicant's statutory entitlement to 10 (ten) days' notice. Applicant was very clear in expressing that he did not want a continuance and wanted to proceed with trial on the date already scheduled, due to the impact of the pendency of the cases on his life and practice. I advised Applicant that by failing to ask for a continuance, he would most likely be waiving that as a possible appellate issue. Applicant stated that he understood, and was willing to take that risk. Because Applicant was himself an experienced criminal defense trial lawyer, I assessed that his decision was knowing, voluntary, and strategic. Further, Applicant chose from among other presented options and directed Affiant to instead file Motions to Quash and for a Directed Verdict of Acquittal. Applicant made similar decisions throughout the trial, including directing Affiant not to make a Motion for Mistrial in conjunction with the Motion to Quash and Motion for Directed Verdict, despite Affiant's counsel that, again, failing to do so may constitute a waiver of those issues for appellate purposes.

The trial court found, among other things, that (1) trial counsel "provides a credible explanation reflecting that this aspect of counsel's conduct resulted from a reasonable trial strategy"; (2) Appellant "has not rebutted the 'strong presumption' that this aspect of counsel's conduct fell within the wide range of reasonable, professional assistance"; and (3) the court "could properly have denied any such motion for continuance because Applicant was not 'so taken by surprise that a fair trial cannot be had.'"

The original indictment and the re-indictment contain the same allegations in both counts; the difference between the two indictments is that the re-indictment lists the false statements contained in the two affidavits. However, there is nothing in the record that could support a contention that Appellant was surprised; there is no support in the record that a motion for continuance was meritorious, which is what Appellant was required to show in order to establish that his trial counsel rendered ineffective assistance. *See Jackson v. State*, 973 S.W.2d 954, 957 (Tex.

Crim. App. 1998) (en banc); *Straight v. State*, 515 S.W.3d 553, 565 (Tex. App.—Houston [14th Dist.] 2017, pet. ref'd).

Additionally, the trial court found that Appellant is estopped by the doctrine of invited error from asserting an ineffective assistance claim based on his trial counsel's failure to move for a continuance because "the allegedly deficient aspects of [trial counsel]'s representation resulted from the direct instructions of the Applicant to [trial counsel], was made with Applicant's full blessing and endorsement, and/or resulted from a joint decision made by Applicant and [trial counsel]."

The trial court's finding is supported by trial counsel's affidavit, in which he stated that Appellant "was very clear in expressing that he did not want a continuance and wanted to proceed with trial on the date already scheduled, due to the impact of the pendency of the cases on his life and practice. I advised Applicant that by failing to ask for a continuance, he would most likely be waiving that as a possible appellate issue. Applicant stated that he understood, and was willing to take that risk." *See Ex parte Sanchez*, 625 S.W.3d at 144 (findings of historical fact made at the trial level are still given deference on appeal even when the findings are based solely on affidavits). Further, trial counsel averred that he concluded Appellant's decision to not move for a continuance "was knowing, voluntary, and strategic" because Appellant "was himself an experienced criminal defense trial lawyer."

After telling his trial counsel that he did not want a continuance and wanted to proceed with trial, Appellant (a criminal defense attorney) cannot claim ineffective assistance based on his trial counsel's failure to move for a continuance. *See Aguirre v. State*, No. 11-11-00313-CR, 2013 WL 5776948, at *1 (Tex. App.—Eastland Oct. 24, 2013, no pet.) (mem. op., not designated for publication) (under

the doctrine of invited error, Appellant was estopped from complaining that her counsel rendered ineffective assistance of counsel due to a purported conflict of interest because she expressly waived the claimed conflict in a hearing before trial); *In re R.S.*, No. 14-08-01013-CV, 2009 WL 3191515, at \*5 (Tex. App.—Houston [14th Dist.] Oct. 1, 2009, pet. denied) (mem. op.) ("Appellant's actions thwarted her counsel's efforts at trial. Appellant also could be said to have invited any error by her counsel. The invited error doctrine applies to situations where a party requests a specific ruling or action, then complains of that action on appeal. The intentional withholding of information by a client cannot result in an ineffective assistance of counsel claim.").

### b. Government Code Definition of Affidavit

Appellant also contends that he was denied effective assistance of counsel because his trial counsel failed to (1) educate himself on the law of affidavits and failed to assert the defense that Appellant was legally innocent of the charge against him because "Appellant could not legally be the 'maker' of an affidavit that he did not himself sign" as required by the definition of "affidavit" in section 312.011(1) of the Government Code; (2) request a jury instruction on the definition of "maker" of an affidavit; and (3) "argue to the jury that Appellant was not and could not be the maker of the affidavits in question."

However, as we already explained, because the Government Code definition of "affidavit" would not be included in a hypothetically correct jury charge, the State was not required to prove that Appellant signed the affidavits in order to have made the documents with knowledge of their falsity under section 37.09(a)(2). Therefore, Appellant could not have been denied effective assistance of counsel for failing to request a jury instruction or make an argument based on section 312.011(11)'s definition of "affidavit." Under the applicable standard of review,

we conclude the trial court acted within its discretion in determining that Appellant did not prove by a preponderance of evidence the test for ineffective assistance of counsel.

We overrule Appellant's third issue.

### 3.      Appellate Counsel

In his fourth issue, Appellant asserts his appellate counsel's performance was deficient for failing to argue on appeal that under section 312.011(1) "Appellant could not legally be the 'maker' of an affidavit that he did not sign himself."  Appellant asserts that "[b]ecause Texas Government Code Section 312.011 provides that the 'maker' of an affidavit is the person signing it, and everyone agrees that Appellant was not the signor of the affidavits, Appellant could not possibly be guilty of the making charge and his conviction under this theory was illegal.  Had [appellate counsel] presented this argument on appeal, it would have had indisputable merit under well settled law and would have necessarily resulted in reversible error."

As we stated above, the definition of "affidavit" in section 312.011(1) would not be included in a hypothetically correct jury charge, and the State was not required to prove that Appellant signed the affidavits in order to have made the documents with knowledge of their falsity under section 37.09(a)(2).  Accordingly, Appellant could not have been denied effective assistance of counsel based on his appellate counsel's failure to argue on appeal that under section 312.011(1) "Appellant could not legally be the 'maker' of an affidavit that he did not sign himself."  Thus, we conclude the trial court acted within its discretion when it determined Appellant did not prove by a preponderance of evidence he received ineffective assistance of counsel on appeal.

We overrule Appellant's fourth issue.

## CONCLUSION

We affirm the trial court's orders denying Appellant's applications for writ of habeas corpus.


/s/      Meagan Hassan
         Justice


Panel consists of Chief Justice Christopher and Justices Wise and Hassan.

Do Not Publish — Tex. R. App. P. 47.2(b).